In the Matter of HIGHWAY TAVERN CORPORATION, Petitioner, v
EDWARD J. MCLAUGHLIN et al., Respondents.

Second Department, December 17, 1984

APPEARANCES OF COUNSEL

*George M. Harmel, Jr.* (*Charles M. Newell* of counsel), for petitioner.

*Gloria M. Dabiri* (*Stephen D. Kalinsky* of counsel), for respondents.

OPINION OF THE COURT

MOLLEN, P. J.

In this proceeding, the petitioner Highway Tavern Corporation, a retail licensee for on-premises consumption of alcoholic beverages, seeks a judgment pursuant to CPLR article 78 annulling the respondent State Liquor Authority's (hereinafter respondent) determination directing the suspension of its license for 80 days and ordering the forfeiture of a $1,000 bond. This disciplinary action was predicated on findings adopted by the respondent, after a hearing, that the petitioner had violated section 106 of the Alcoholic Beverage Control Law and rule 36 (subd 1, par [r]) of the State Liquor Authority Rules (9 NYCRR 53.1 [r]), in that the petitioner suffered or permitted the licensed premises to become disorderly and suffered or permitted a female to appear on those premises in such a manner as to expose her pubic hair, vulva and/or anus.[1] The petitioner contends,

---

1. Section 106 of the Alcoholic Beverage Control Law, in relevant part, provides: "6. No person licensed to sell alcoholic beverages shall * * * suffer or permit [the licensed] premises to become disorderly."
No criminal penalties are prescribed for violating this section (see Alcoholic Beverage Control Law, § 130, subd 3).

*inter alia,* that the action taken by the respondent cannot be sustained because the Alcoholic Beverage Control Law, as applied, and the State Liquor Authority rule, on its face, unduly interfere with the freedom of expression as guaranteed by both the Federal and State Constitutions (US Const, 1st, 14th Amdts; NY Const, art I, § 8).[2] We disagree with the petitioner and conclude that neither the statute nor the rule violates these constitutional guarantees.

On October 25, 1981, at approximately 9:00 P.M., three plain-clothes police officers witnessed a performance at the licensed premises operated by the petitioner. The performer, a female, appeared on stage, clothed in panties and an overgarment, and began to dance to music from a jukebox. She then removed her overgarment and began to dance topless. Next, she removed her panties, and, completely naked, she lay down on a blanket on the stage, exposing her vaginal and anal areas. During the ensuing 15 minutes, she placed her finger in and out of her vaginal area while gyrating to the music. Occasionally, she stood up and walked around the stage, bent over, and spread the cheeks of her buttocks with her hands.

The entire performance lasted some 30 minutes. After the performer left the stage, the police officers identified themselves to the manager-barmaid and arrested the performer for public lewdness. The disposition of the arrest is unknown.

By notice of pleading and hearing, dated February 4, 1982, the respondent, *inter alia,* brought the following charges against the petitioner:

"(1) That the licensee [the petitioner] violated Section 106, subd. 6 of the Alcoholic Beverage Control Law in that it suffered or permitted the licensed premises to become disorderly by

---

Rule 36 of the State Liquor Authority (9 NYCRR 53.1 [r]) provides, in part that,

"Any license or permit issued pursuant to the Alcoholic Beverage Control Law may be revoked, cancelled or suspended for the following causes * * *

"(r) For suffering or permitting on licensed premises (1) any lewd or indecent conduct, or (2) any person to appear unclothed or in such manner or attire as to expose to view any portion of the pubic hair, anus, vulva or genitals, or any simulation thereof."

**2.** The First Amendment to the United States Constitution, in relevant part, provides that "Congress shall make no law * * * abridging the freedom of speech". The free speech clause has been made applicable to the States through the Fourteenth Amendment (see *Miller v California,* 413 US 15, 25).

Section 8 of article I of the New York State Constitution similarly provides that "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

suffering or permitting a lewd and indecent performance to occur therein on October 25, 1981.

"(2) That the licensee suffered or permitted a female to appear in the licensed premises on October 25, 1981 in such a manner as to expose her pubic hair, vulva and/or anus; all cause for revocation, cancellation or suspension of its license in accordance with Rule 36, subd 1 [r] of the Rules of the State Liquor Authority (9 NYCRR 53.1 [r])."

A hearing was conducted, after which the hearing officer concluded that these charges were sustained by the credible evidence. The respondent adopted the hearing officer's findings and sustained the charges.

Within the time prescribed by the applicable Statute of Limitations (see CPLR 217), the petitioner commenced this proceeding seeking "a Judgment pursuant to CPLR Article 78 that the findings of the New York State Liquor Authority are arbitrary, whimsical and capricious, and/or non-supported by fact, and is [*sic*] unconstitutional". With regard to the latter, the petitioner alleged that,

"11. Rule 36, subdivision 1 (r) of the Rules of the State Liquor Authority (9 NYCRR 53-1 [R]) and Alcoholic Beverage Control Law, subdivision 6 of Section 106 is [*sic*] unconstitutional pursuant to the holding of the courts of the State of New York, pursuant to the First and Fourteenth Amendments of Section 8 of Article I of the State Constitution of the State of New York [*sic*].

"12. The Petitioner alleges herein that dancing is a form of expression protected by the First Amendment and nude dancing is an art to be protected by the constitutional protection of freedom of expression.

"13. The complainant's license has been wrongfully suspended, based upon the illegal, invalid, and unconstitutional statutes and rules and regulations of the Alcoholic Beverage Control Law, subdivision 6 of Section 106 and Rule 36, subdivision 1 [R] of the Rules of the State Liquor Authority (9 NYCRR 53-1 [R])."

The respondent denied the allegations in paragraphs 11 and 13, and further denied "the materiality and relevance of each and every allegation contained in" paragraph 12. The parties thereafter stipulated that enforcement of the disciplinary action taken by the respondent was to be conditionally postponed.

By order dated July 17, 1983, the Supreme Court, Suffolk County (Christ, J.), transferred the proceeding to this court pursuant to CPLR 7804 (subd [g]).

■ At the outset, we note that, insofar as the petitioner challenges the constitutionality of the statute and the rule, as opposed to the action taken pursuant to the aforesaid statute and rule, this article 78 proceeding must be converted to an action for a declaratory judgment (*92-07 Rest. v New York State Liq. Auth.,* 80 AD2d 603, app withdrawn 54 NY2d 834).

The petitioner's facial challenge to rule 36 (subd 1, par [r]) of the State Liquor Authority's Rules (9 NYCRR 53.1 [r]) is based on the doctrine of "overbreadth", under which "a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court" (*Schaumburg v Citizens For a Better Environment,* 444 US 620, 634; accord *Schad v Mount Ephraim,* 452 US 61, 66). Standing to raise an overbreadth challenge is conferred in such cases "[b]e-cause overbroad laws * * * deter privileged activity" (*Grayned v City of Rockford,* 408 US 104, 114).[3]

Reduced to its essentials, the petitioner's position is not that the specific conduct, upon which the afore-mentioned charges were predicated, is a form of expression entitled to constitu-tional protection. Rather, the petitioner's argument is that the rule, which authorizes the State Liquor Authority to penalize licensees for suffering or permitting "any person to appear [on licensed premises] unclothed or in such manner or attire as to expose to view any portion of the pubic hair, anus, vulva or genitals" (9 NYCRR 53.1 [r] [2]), reaches protected expression including nude (bottomless) dancing. The petitioner further argues that the rule cannot stand without violating the princi-ple that statutes, including rules and regulations promulgated by State administrative agencies, punishing expressive conduct "must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of appli-cation to protected expression" (*Gooding v Wilson,* 405 US 518, 522). A rule that violates this principle by substantially abridg-ing protected expression is invalid on its face and cannot be enforced against anyone (see *Members of City Council v Taxpay-ers for Vincent,* 466 US __, 104 S Ct 2118).

In *Schad v Mt. Ephraim* (452 US 61, 65-66, *supra*), the Supreme Court stated what has become familiar law with re-gard to what constitutes protected expression: "Entertainment,

---

**3.** The petitioner is not precluded from asserting Federally and State protected rights of freedom of expression because of its status as a privately owned but government regulated corporation (see *Consolidated Edison Co. v Public Serv. Comm.,* 447 US 530, 533-534, 534, n 1).

as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee * * * Nor may an entertainment program be prohibited solely because it displays the nude human figure. '[N]udity alone' does not place otherwise protected material outside the mantle of the First Amendment * * * Furthermore * * * nude dancing is not without its First Amendment protections from official regulation."

Nudity, including nude dancing, is therefore a form of expression protected by the First and Fourteenth Amendments to the United States Constitution. And because "the guarantee of freedom of expression set forth in our State Constitution is of no lesser vitality than that set forth in the Federal Constitution" (*Bellanca v New York State Liq. Auth.*, 54 NY2d 228, 235, cert den 456 US 1006), such expression is entitled to at least the same measure of protection under section 8 of article I of the New York State Constitution as that afforded by its Federal counterpart.

The protections afforded nudity, however, are not limitless. Clearly, a State may prohibit obscene performances without running afoul of the Constitution (see *Bellanca v New York State Liq. Auth., supra,* p 231). Once it is established that the average person, applying contemporary community standards, would find that the work appeals to prurient interest, that it depicts or describes in a patently offensive way, sexual conduct specifically defined by applicable State law, and that, taken as a whole, it lacks serious artistic value (*Miller v California,* 413 US 15, 24), the performance loses its constitutional protections (see *Lnu v State,* 654 SW2d 2 [Tex]. Conduct of the sort contemplated by rule 36 of the New York State Liquor Authority Rules, viz., appearing in an establishment licensed to sell alcoholic beverages "unclothed or in such manner or attire as to expose to view any portion of the pubic hair, anus, vulva, or genitals", as well as the specific conduct in the case at bar, clearly is of the sort described in *Miller* (*supra*).

Furthermore, nude entertainment may be regulated in connection with a State's program providing for the licensure of establishments selling alcoholic beverages. In *California v La-Rue* (409 US 109), the Supreme Court relied on section 2 of the Twenty-first Amendment to the Constitution[4] to sustain the

---

**4.** Section 2 of the Twenty-first Amendment provides that "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

regulation of entertainment in bars and nightclubs licensed to sell liquor by the drink. The regulations, which were adopted by the California Department of Alcoholic Beverage Control after conducting public hearings, in relevant part, prohibited the following kinds of conduct on licensed premises:

"(a) The performance of acts, or simulated acts of 'sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law';

"(b) The actual or simulated 'touching, caressing or fondling on the breast, buttocks, anus or genitals';

"(c) *The actual or simulated 'displaying of the pubic hair, anus, vulva or genitals';*

"(d) *The permitting by a licensee of 'any person to remain in or upon the licensed premises who exposes to public view any portion of his or her genitals or anus';* and, by a companion section,

"(e) The displaying of films or pictures depicting acts a live performance of which was prohibited by the [quoted regulations]" (409 US 109, 111-112, *supra;* emphasis added).

In upholding the constitutionality of the regulations in question, the Supreme Court noted that, "[w]hile the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals" (409 US 109, 114, *supra*).

And though the court conceded that its previous cases "did not go so far as to hold or say that the Twenty-first Amendment supersedes all other provisions of the United States Constitution in the area of liquor regulations" (409 US 109, 115, *supra*), the court pointedly added that,

"[t]he substance of the regulations * * * prohibits licensed bars or nightclubs from displaying, either in the form of movies or live entertainment, 'performances' that partake more of gross sexuality than of communication. While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

"Viewed in this light, we conceive the State's authority in this area to be somewhat broader than did the District Court. This is not to say that all such conduct and performance are without the protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries that the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater" (409 US 109, 118, *supra*).

In short, the court could not label as "irrational" the conclusion of the California Department of Alcoholic Beverage Control "that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses" (409 US 109, 118, *supra*), given the evidence presented to the Department at the public hearings (see 409 US 109, 110-111, *supra*), and "the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires" (409 US 109, 118-119, *supra*).

Two terms later, in *Doran v Salem Inn* (422 US 922), the Supreme Court was called upon to determine whether a Federal District Court abused its discretion in granting a preliminary injunction against enforcement of a local ordinance, enacted by the Town of North Hempstead, "making it unlawful for bar owners and others to permit waitresses, barmaids, and entertainers to appear in their establishments with breasts uncovered or so thinly draped as to appear uncovered" (422 US 922, 924, *supra*).

Concluding that the District Court had not abused its discretion because, *inter alia,* the respondents made a sufficient showing of the likelihood of ultimate success on the merits (422 US 922, 932, *supra*), the court noted: "Although the customary 'barroom' type of nude dancing may involve only the barest minimum of protected expression, we recognized in *California* v. *LaRue,* 409 U.S.109, 118 (1972), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances. In *LaRue,* however, we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as part of its liquor license program" (422 US 922, 932-933, *supra*).

Without " 'intimat[ing] [a] view as to the ultimate merits of [respondents'] contentions' " (422 US 922, 934, *supra*), the court found the local ordinance to be troublesome in that its prohibitions were not confined solely to places dispensing alcoholic beverages, but, rather, extended to any public place (422 US 922, 932, *supra*). The court added that no other legitimate State interest was raised by the petitioner "that would counterbalance the constitutional protection presumptively afforded to activities which are plainly within the reach of [the ordinance]" (422 US 922, 934, *supra*).

In response to *Doran* (*supra*), the Town of North Hempstead amended its ordinance to prohibit topless dancing in every " 'cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop' " within the town's borders (*Salem Inn v Frank*, 522 F2d 1045, 1047). The Second Circuit found the ordinance, as amended, to be unconstitutional as well, agreeing with the District Court that "the ordinance was not justified as an exercise of delegated Twenty-first Amendment State power, first because there is not involved the kind of conduct properly subject to regulation as a phase of liquor-licensing * * * and second because the instant ordinance applies to places *not* serving alcoholic beverages" (522 F2d 1045, 1047, *supra*).

*Doran,* as applied by the Second Circuit in *Frank,* has been followed in other instances (see *Morris v Municipal Ct.,* 32 Cal 3d 553). Indeed, in *Commonwealth v Sees* (374 Mass 532, 535-536), cited in *Morris* (32 Cal 3d 553, 562, *supra*), the Supreme Judicial Court of Massachusetts noted that, "[b]efore 1975 prohibition of topless or bottomless dancing in designated establishments was widely upheld as directed against conduct rather than speech * * * But it now seems clear that such ordinances violate the First Amendment *if not limited to places dispensing alcoholic beverages.*" (Emphasis supplied.)

Regulation of live entertainment in the context of liquor licensure arose most recently, and most significantly insofar as this proceeding is concerned, in *Bellanca v New York State Liq. Auth.* (50 NY2d 524, revd 452 US 714, on remand 54 NY2d 228, *supra*). At issue in *Bellanca* was the constitutionality of subdivision 6-a of section 106 of the Alcoholic Beverage Control Law, to the extent that, "it prohibit[ed] topless dancing at premises licensed by the State Liquor Authority" (50 NY2d 524, 526, *supra*). Subdivision 6-a of section 106 provided that, "No retail licensee for on-premises consumption shall suffer or permit any person to appear on licensed premises in such manner or attire as to expose to view any portion of the pubic area, anus, vulva or

genitals, or any simulation thereof, nor shall suffer or permit any female to appear on licensed premises in such manner or attire as to expose to view any portion of the breast below the top of the areola."

Prior to the enactment of this section of the Alcoholic Beverage Control Law in 1977 (see L 1977, ch 321, § 1), the State Liquor Authority had adopted rules prohibiting nudity and "lewd and indecent conduct" on premises licensed to sell alcohol (see 9 NYCRR 53.1 [r]). The rules also provided that the licensee should not suffer or permit "any female to appear on licensed premises in such manner or attire as to expose to view any portion of the breast below the top of the areola, or any simulation thereof. *The provisions of this subdivision shall not apply to any female entertainer performing on a stage or platform which is at least 18 inches above the immediate floor level and which is removed by at least six feet from the nearest patron*" (9 NYCRR 53.1, former subd [s], quoted in *Bellanca v New York State Liq. Auth.*, 50 NY2d 524, 526, n 2, *supra;* emphasis added). When enacted, subdivision 6-a of section 106 of the Alcoholic Beverage Control Law did not "carry forward [the underscored language of the rule] permitting topless dancing" (50 NY2d 524, 527, *supra*). Moreover, to be consistent with the legislation, the State Liquor Authority amended former subdivision (s) by deleting the condition under which topless dancing would be permitted (see *Bellanca v New York State Liq. Auth.*, 54 NY2d 228, 232, n 2, *supra*).

Holding that, on its face, subdivision 6-a violated the First Amendment, to the extent that it "prohibit[ed] a single activity, topless dancing, which is not inherently obscene" (50 NY2d 524, 529, *supra*), the Court of Appeals found *California v LaRue* (409 US 109, *supra*) to be distinguishable. Indeed, the court considered dispositive "the factors which the Supreme Court discussed so extensively and actually relied upon in *La Rue*" (50 NY2d 524, 530, n 6, *supra*).

First, the California regulations, noted the Court of Appeals, "in 'substance' prohibited performances [in establishments licensed to sell liquor by the drink] 'that partake more of gross sexuality than of communication'" (50 NY2d 524, 529, *supra*). The court expressed the view that the prohibited acts were "probably criminally obscene as well" (50 NY2d 524, 529, *supra*).

The challenged portion of subdivision 6-a of section 106 of the Alcoholic Beverage Control Law, by way of contrast, only prohibited topless dancing, which, as previously mentioned, the

Court of Appeals held was not inherently obscene and was therefore entitled to some measure of First Amendment protection (50 NY2d 524, 529-530, *supra*).

Second, in *LaRue* (409 US 109, *supra*), evidence was presented at public hearings to support the State's conclusions, embodied in the challenged regulations, that certain conduct should not be permitted at licensed premises. Subdivision 6-a, the Court of Appeals concluded, was apparently enacted without the benefit of public hearings or legislative awareness of the deficiencies in the prior regulation that permitted topless dancing subject to restrictions and supervision by the State Liquor Authority (50 NY2d 524, 530, *supra*). In short, the court concluded that no rational basis could be found in the record to support the State's conclusion that topless dancing should not be permitted in establishments licensed to sell alcoholic beverages (see *infra,* p 136).

The significance of *Bellanca* (*supra*), insofar as it is germane to the issues presented herein, may be more in what the Court of Appeals expressly excluded from its holding, rather than the holding itself: "In the case now before us the plaintiffs do not claim a right to offer performances of explicit sexual acts, live or filmed, real or simulated. Nor are we concerned with nude dancing. There is no contention that the plaintiffs should have a right to present their dancers entirely unclothed, and thus they do not challenge that portion of the statute which prohibits nudity. Nor do they contest the statute insofar as it would prohibit women other than dancers from appearing bare-breasted on their premises. Similarly the plaintiffs do not contest the State's right to place some restrictions on topless dancing performances as the Liquor Authority's regulations have done in the past. Finally, of course, the plaintiffs do not claim that they are exempted from the obscenity laws or that topless dancing should always be allowed no matter how, or where performed. The only question before us is whether the statute is constitutional to the extent that it absolutely prohibits liquor licensees from presenting nonobscene topless dancing performances to willing customers under all circumstances" (50 NY2d 524, 529, *supra*).

The Supreme Court disagreed with the Court of Appeals and summarily reversed, explaining that, "[j]udged by the standards announced in *LaRue* and *Doran,* the statute at issue here is not unconstitutional. What the New York Legislature has done in this case is precisely what this Court in *Doran* has said a State may do. Pursuant to its power to regulate the sale of liquor

within its boundaries, it has banned topless dancing in establishments granted a license to serve liquor. The State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs" (*New York State Liq. Auth. v Bellanca,* 452 US 714, 717, *supra*).

Without commenting on the distinctions between *LaRue* and *Bellanca* (*supra*) perceived by the Court of Appeals to be controlling, the Supreme Court determined that explicit legislative findings, supporting the State's conclusion that prohibition of topless dancing was necessary, in fact existed in an accompanying legislative memorandum, citing New York State Legislative Annual (1977, p 150) (452 US 714, 717-718, *supra*).

In an expansive reaffirmation of the powers conferred by the Twenty-first Amendment, the Supreme Court concluded that, "the elected representatives of the State of New York have chosen to avoid the disturbances associated with mixing alcohol and nude dancing by means of a reasonable restriction upon establishments which sell liquor for on-premises consumption. Given the 'added presumption in favor of the validity of the state regulation' conferred by the Twenty-first Amendment * * * we cannot agree with the New York Court of Appeals that the statute violates the United States Constitution. Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment" (452 US 714, 718, *supra*).

Nevertheless, on remand, the Court of Appeals held that the blanket prohibition of topless dancing in establishments licensed by the State Liquor Authority embodied in subdivision 6-a of section 106 of the Alcoholic Beverage Control Law violated the guarantee of freedom of expression set forth in section 8 of article I of the New York State Constitution (54 NY2d 228, *supra*).

The court reasoned that, though the Twenty-first Amendment "substantially curtailed the operative scope of the First Amendment" (54 NY2d 228, 234, *supra*), the New York Constitution contained no equivalent provisions modifying the State's guarantee of freedom of expression, nor was there anything in the Twenty-first Amendment to suggest that the scope of the New York guarantee could be similarly curtailed (54 NY2d 228, 235, *supra*).[5] The court further reasoned that the State's authority to

5. The Alaska Supreme Court, in *Mickens v City of Kodiak* (640 P2d 818, 821-822 [Alaska]), applied the same rationale in holding unconstitutional under the free speech clause of the State Constitution (art I, § 5), a local ordinance prohibiting, *inter alia,* nude dancing.

prohibit and regulate the sale of alcoholic beverages stemmed from the State's inherent police power as a sovereign, and not from the Twenty-first Amendment, which merely recognized the State's right to do so. Thus, the State's exercise of its authority is "necessarily subject to the strictures of our State Constitution, of which the guarantee of freedom of expression found in section 8 of article I is controlling in this instance" (54 NY2d 228, 235-236, *supra*). The Court of Appeals disagreed with the Supreme Court concerning the existence of legislative findings and repeated that "[t]he determinative infirmity in the enactment of subdivision 6-a by the Legislature was the total absence of any findings by the Legislature or by the State Liquor Authority to support a rationally based factual justification for the blanket prohibition" (54 NY2d 228, 232, *supra*). The court concluded that the State constitutional guarantee of freedom of expression, being "of no lesser vitality than that set forth in the Federal Constitution (considered without reference to the curtailing effect of its Twenty-first Amendment)" (54 NY2d 228, 235, *supra*), recognized nonobscene topless dancing as a form of protected expression. As such, it may not be prohibited in the absence of sufficient findings that the prohibition is "so functionally related to the exercise of the State's authority to regulate the sale and consumption of alcoholic beverages as to overcome the applicable constitutional guarantee of freedom of expression" (54 NY2d 228, 231, *supra*).

The issue presented in this case, viz., the constitutionality of the State Liquor Authority rule authorizing the revocation, cancellation, or suspension of a license to sell alcoholic beverages "[f]or suffering or permitting on licensed premises * * * any person to appear unclothed or in such manner or attire as to expose to view any portion of the pubic hair, anus, vulva or genitals, or any simulation thereof" (9 NYCRR 53.1 [r] [2]), has yet to be addressed by the Court of Appeals. Though this language was also contained in subdivision 6-a of section 106 of the Alcoholic Beverage Control Law, it is clear from the language quoted at pages 130 and 132, of this opinion, that in both *Bellanca* decisions the Court of Appeals held unconstitutional only that portion of subdivision 6-a which prohibited topless dancing. In fact, as set forth earlier, the court expressly exempted from its holdings the kind of conduct contemplated by the State Liquor Authority rule which is under review herein.

Subsequent to the first *Bellanca* decision, but prior to the Supreme Court's ruling and the Court of Appeals second *Bellanca* decision, this court, in *92-07 Rest. v New York State Liq. Auth.* (80 AD2d 603, *supra*) upheld the facial constitutionality of

9 NYCRR 53.1 (r) (2) pursuant to the Twenty-first Amendment. We find nothing in the Supreme Court's ruling or the Court of Appeals second *Bellanca* decision which would lead us to conclude that our determination in *92-07 Rest. v New York State Liq. Auth.* (*supra*) has not withstood the test of time or critical analysis.

The State Liquor Authority rule challenged by the petitioner was promulgated by the Authority pursuant to its general rule-making powers (see Alcoholic Beverage Control Law, §§ 2, 17, 114, 118). The rule prohibits a liquor licensee to suffer or permit on the licensed premises "any person to appear unclothed or in such manner or attire as to expose to view any portion of the pubic hair, anus, vulva or genitals, or any simulation thereof" (9 NYCRR 53.1 [r] [2]). The rule's prohibition extends solely to establishments licensed by the State to sell alcoholic beverages.

Undoubtedly, the rule subsumes expression entitled to some measure of constitutional protection since nudity, including nude dancing, is not obscene per se (*Schad v Mt. Ephraim,* 452 US 61, *supra*). It is equally true, however, that the rule (the language of which is strikingly similar to that found in the California regulations sustained by the Supreme Court in *California v LaRue,* 409 US 109, 111-112, *supra*), prohibits performances "that partake more of gross sexuality than of communication" (*California v LaRue, supra,* p 118), most of which performances "are probably criminally obscene as well" (*Bellanca v New York State Liq. Auth.,* 50 NY2d 524, 529, *supra*).

In contrast to the provision of the Alcoholic Beverage Control Law prohibiting topless dancing found to be unconstitutional by the Court of Appeals in the two *Bellanca* decisions, the prohibition contained in rule 36 (9 NYCRR 53.1 [r] [2]) is one of long standing (*92-07 Rest. v New York State Liq. Auth., supra,* p 606).

Prior to 1975, the State Liquor Authority regarded total nudity, as well as "topless waitresses" serving food and drink to customers, as lewd and indecent conduct which could result in the imposition of a penalty pursuant to subdivision 6 of section 106 of the Alcoholic Beverage Control Law (see State Liquor Authority Memorandum to the Governor, June 22, 1977). However, in *Matter of Beal Props. v State Liq. Auth.* (37 NY2d 861), the Court of Appeals ruled that in the absence of a regulation by the agency giving notice that conduct not lewd nor indecent per se was prohibited, sanctions could not be imposed. As a consequence of this ruling, the State Liquor Authority, in December, 1975, adopted rule 36 (subd 1, pars [r], [s]) (see 9 NYCRR 53.1 [r], [s]), which prohibited total nudity and permitted topless

performances only on a platform (see *supra,* p 131). In 1977, in an apparent effort to combat the spread of pornography and sex-oriented businesses, both of which contribute to neighborhood decay, the Legislature added subdivision 6-a to section 106 of the Alcoholic Beverage Control Law. As previously discussed (see *supra,* pp 133, 134), subdivision 6-a was held unconstitutional by the Court of Appeals, to the extent that it prohibited topless dancing, because of "the total absence of any findings by the Legislature or by the State Liquor Authority to support a rationally based factual justification for the blanket prohibition" (*Bellanca v New York State Liq. Auth.,* 54 NY2d 228, 232, *supra*). The court was also unwilling to "indulge an additional presumption and assume that the Legislature did investigate and find sufficient facts to support the legislation" (*Bellanca v New York State Liq. Auth.,* 50 NY2d 524, 530, *supra*), in light of the fact that the State Liquor Authority rule recognizing the legitimacy of topless dancing, subject to conditions, antedated the sudden and seemingly inexplicable enactment of subdivision 6-a, which totally banned the same conduct.

Unlike topless dancing, conduct of the kind contemplated by rule 36 (subd 1, par [r], cl [2]) of the State Liquor Authority (see 9 NYCRR 53.1 [r] [2]) has never been permitted in either the Alcoholic Beverage Control Law or the State Liquor Authority Rules promulgated to effect the intent of that law. Well before rule 36 (subd 1, par [r], cl [2]) was promulgated, experience had taught that this conduct was incompatible with the maintenance of order in establishments licensed to sell alcoholic beverages, and should therefore not be permitted (see Memorandum of Assemblyman John A. Esposito in support of amdt to Alcoholic Beverage Control Law, § 106). Under these circumstances, it is entirely appropriate "to indulge the presumption that facts sufficient to support the prohibition [set forth in 9 NYCRR 53.1 (r) (2)] were found to exist" (*92-07 Rest. v New York State Liq. Auth.,* 80 AD2d 603, 606, *supra*).

■ In our view, the State Liquor Authority rule, the goal of which is to "prohibit from licensed premises performances 'that partake more of gross sexuality than of communication' " (*92-07 Rest. v New York State Liq. Auth., supra,* p 606, quoting *California v LaRue,* 409 US 109, 118, *supra*), is a legitimate exercise of the State's power to regulate the sale of alcoholic beverages pursuant to the Twenty-first Amendment. As a matter of Federal constitutional law, "the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweigh * * * any First Amendment interest in nude dancing" and a State can therefore "ban such dancing as a part

of its liquor license program" (*Doran v Salem Inn,* 422 US 922, 932-933, *supra;* accord *New York State Liq. Auth. v Bellanca,* 452 US 714, 717, *supra*). This principle is particularly applicable to conduct which is inherently obscene. Moreover, the prohibition is not a blanket prohibition applicable to all establishments, but, rather is limited to those establishments licensed to sell alcoholic beverages (see *Salem Inn v Frank,* 522 F2d 1045, *supra*). And assuming the law requires that findings be made by the agency to uphold the rule's constitutionality (see *New York State Liq. Auth. v Bellanca, supra,* p 717), we are satisfied that the presumption indulged in by this court, that sufficient facts existed to support the rule, meets this requirement.

We also conclude that the State, through the State Liquor Authority's rule, validly exercised its inherent police power as a sovereign to regulate the sale and consumption of alcohol (see *Bellanca v New York State Liq. Auth.,* 54 NY2d 228, 235, *supra*). Even nonobscene expression may be regulated as a matter of State constitutional law, "to the extent of its prohibition, in circumstances so functionally related to the * * * State's authority to regulate the sale and consumption of alcoholic beverages as to overcome the applicable constitutional guarantee of freedom of expression" (*Bellanca v New York State Liq. Auth., supra,* p 231). The "determinative infirmity" found in the legislation prohibiting topless dancing, viz., "the total absence of any findings by the Legislature or by the State Liquor Authority to support a rationally based factual justification for the blanket prohibition" (*supra,* p 232), is simply absent from the case at bar.

Our conclusion that rule 36 (subd 1, par [r], cl [2]) is not on its face inconsistent with State constitutional guarantees of freedom of expression, was actually presaged by the two Court of Appeals opinions in *Bellanca v New York State Liquor Auth.* (50 NY2d 524, *supra,* and 54 NY2d 228, *supra*). A reading of both decisions (particularly 50 NY2d 524, 529, *supra*), reveals the court's considerable efforts to isolate and exempt from its holdings the very conduct which is at the heart of the State Liquor Authority rule under review in this proceeding. Though the petitioner would have us read the *Bellanca* decisions as equating, in a constitutional sense, topless dancing with the conduct contemplated by rule 36 (subd 1, par [r], cl [2]), we find no basis to support that reading in either *Bellanca* decision. Parenthetically we note that the Supreme Judicial Court of Massachusetts, in *City of Revere v Aucella* (369 Mass 138, app dsmd *sub nom. Charger Invs. v Corbett,* 429 US 877), held that a similarly written ordinance was not on its face violative of the Common-

wealth's Constitution (see *Commonwealth v Sees,* 374 Mass 532, 533-534, *supra;* cf. *Mickens v City of Kodiak,* 640 P2d 818).

Lastly, our holding that rule 36 (subd 1, par [r], cl [2]) is consistent on its face with the Federal and State constitutional guarantees of freedom of expression does not determine the rule's application to all cases. In this context, the Supreme Court's admonition in *Seagram & Sons v Hostetter* (384 US 35, 52) is particularly apt: "Although it is possible that specific future applications of [the rule] may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise. We deal here only with the [rule] on its face. And we hold that, so considered, the [rule] is constitutionally valid." We defer to a later day the question of whether some specific application of rule 36 (subd 1, par [r], cl [2]) may engender problems of constitutional dimension, as that question has not been presented in this proceeding.

■ The petitioner's second contention that section 106 of the Alcoholic Beverage Control Law is unconstitutional, as applied herein, is totally devoid of merit. Pursuant to section 106 and rule 36 (subd 1, par [r], cl [1]) of the Rules of the State Liquor Authority (9 NYCRR 53.1 [r] [1]),[6] the respondent charged that the petitioner had "suffered or permitted the licensed premises to become disorderly by suffering or permitting a lewd and indecent performance to occur therein on October 25, 1981". The hearing officer found that the performance in question was "lewd and indecent per se", which finding was expressly adopted by the respondent.

The term "disorderly" has been determined to include lewd and indecent sexual acts and performances (see *Matter of Salem Inn v New York State Liq. Auth.,* 43 NY2d 713; *Matter of Becker v New York State Liq. Auth.,* 21 NY2d 289; *92-07 Rest. v New York State Liq. Auth., supra*). The question of disorderliness is one of fact (*92-07 Rest. v New York State Liq. Auth., supra,* p 604), and based upon our examination of the record we conclude that there is substantial evidence that the performance in question was lewd and indecent by any standard (see *Matter of Salem Inn v New York State Liq. Auth., supra,* p 714; *92-07 Rest. v New York State Liq. Auth., supra,* p 604). The petitioner concedes as much since no question is raised pertaining to the sufficiency of the evidence of lewdness and indecency, or disorderliness.

As previously discussed (see *supra,* p 124), the conduct found to have been suffered or permitted by the petitioner in the licensed premises included topless dancing, exposure of the dancer's

6. See n 1, *supra.*

vaginal and anal areas, self-manipulation of the vaginal area while gyrating to music, walking undressed around the stage and spreading the cheeks of her buttocks with her hands, all of which lasted some 30 minutes. By its very nature, this exhibition was nothing short of obscene. Plainly there could be no question on the part either of the petitioner or the dancer that the conduct engaged in was of the sort proscribed by section 106 of the Alcoholic Beverage Control Law and New York State Liquor Authority rule 36 (subd 1, par [r], cl [1]) (9 NYCRR 53.1 [r] [1]).

We conclude that whatever protections extend to the customary "barroom" type of dancing (see *Doran v Salem Inn*, 422 US 922, 932, *supra*), those protections do not extend to the patently lewd and indecent conduct found to have been suffered or permitted by the petitioner in the case at bar (see *Matter of Salem Inn v New York State Liq. Auth.*, 43 NY2d 713, 714, *supra*; *Commonwealth v Sees*, 374 Mass 532, 537-538, *supra*). The freedoms encompassed by the First and Fourteenth Amendments to the United States Constitution, and section 8 of article I of the New York Constitution, including the freedom of expression, occupy a preferred place in our society because they are fundamental to our concepts of ordered liberty. Their primary purpose is to encourage the free dissemination of ideas, which is indispensable to the vitality of our pluralistic society. As such, those freedoms must be zealously safeguarded lest they be eroded by incremental incursions, which would have the effect of gradually wearing away these cherished freedoms. No such danger exists here. The petitioner's efforts at equating the conduct in question with recognized forms of protected expression, in our view, trivialize the Federal and State constitutional guarantees of freedom of expression.

In holding that the statute as applied is fully compatible with the Federal and State constitutional guarantees of freedom of expression, we should not be misunderstood as " 'serving as . . . artistic constables,' evaluating the artistic worth and tasteful quality of the performance in its total context" (*Commonwealth v Sees*, 374 Mass 532, 537, *supra*). We conclude only that the constitutional restraints on State action, in the context of protected expression, are inapplicable to the specific conduct found to be so obviously lewd and indecent in this case. That the State has chosen to regulate this conduct through an administrative agency is properly a matter of legislative, not judicial, concern.

In addition to the two charges quoted above (*supra*, pp 124, 125), the respondent charged the petitioner in the notice of

pleading and hearing as follows: "(1) That the licensee violated Section 106, subd. 6 of the Alcoholic Beverage Control Law in that it suffered or permitted the licensed premises to become disorderly in that it suffered or permitted an altercation to occur therein on October 2, 1981." At the hearing, the testimony established that, after a short scuffle among patrons, a dancer began to shout obscenities at the crowd in an apparent effort to incite further fighting. Her tirade continued for 10 to 15 minutes, during which time she waved a pool cue and threw a pool ball into the crowd, fortunately not striking anyone. The manager-barmaid made no attempt to quell the disturbance.

█ The hearing officer found that this incident "was not of such nature as to render the licensed premises disorderly". On review, however, the respondent "reversed" the hearing officer's conclusion and found "that the licensee suffered and permitted the premises to become disorderly on October 2, 1981, by suffering or permitting an altercation to occur". The petitioner in essence contends that the respondent acted arbitrarily and capriciously, and that the charge was not supported by the record evidence. We disagree.

The record before us clearly establishes that the petitioner's manager suffered or permitted an altercation to occur on the date charged. Although the incident was spontaneous and not foreseeable, the manager permitted it to continue for some 10 to 15 minutes. The bar manager's actual knowledge of the incident while in progress and toleration of that incident are sufficient to establish the petitioner's violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law as charged by the respondent.

Moreover, the respondent was not obligated to make new factual findings (see *Matter of Danzo Estate v New York State Liq. Auth.*, 27 NY2d 469, 474). The respondent did not reject the hearing officer's factual findings, but, rather, changed the conclusion to be drawn from the testimony (see *Matter of Danzo Estate v New York State Liq. Auth., supra,* p 474).

We have reviewed the petitioner's remaining contentions and find them to be without merit.

Accordingly, insofar as this proceeding is converted into an action for a declaratory judgment, it is declared that subdivision 6 of section 106 of the Alcoholic Beverage Control Law, as applied, and rule 36 (subd 1, par [r]) of the State Liquor Authority Rules (9 NYCRR 53.1 [r]), on its face, are constitutional. The determination of the respondent should be confirmed and the

proceeding dismissed on the merits insofar as it seeks review of said determination.

WEINSTEIN, RUBIN and EIBER, JJ., concur.

Determination confirmed and proceeding dismissed on the merits insofar as it is to review said determination. Proceeding otherwise converted to a declaratory judgment action and it is declared that as applied herein subdivision 6 of section 106 of the Alcoholic Beverage Control Law, and rule 36 (subd 1, par [r]) of the New York State Liquor Authority Rules (9 NYCRR 53.1 [r]), on its face, are constitutional.

No costs or disbursements are awarded.